UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DONYA WILLIAMS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15-cv-1801 (KBJ) |
| WASHINGTON D.C. EVICTION MARSHALS, | ) ) ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM OPINION

On July 29, 2015, pro se Plaintiff Donya Williams ("Williams") filed an action in the Superior Court of the District of Columbia against the "Washington D.C. Eviction Marshals" related to the allegedly harsh manner in which individual deputy Marshals executed an eviction notice. (Compl., ECF No. 1-1, at 1–3.)[1] Williams maintains that, on June 19, 2015, the deputy Marshals entered her apartment with guns drawn, shone flashlights into the eyes of her 13 year-old daughter and frightened her, and then forced Williams to come out of her bedroom and into the living room without allowing her to don clothes. (*Id*. at 1–2.) Williams further asserts that the deputy Marshals laughed at and taunted her, her daughter, and her male friend who was at the apartment during the eviction, and that after the eviction, she could not locate certain items of personal property. (*Id.* at 2–3.) Williams's complaint regarding this incident—which was removed to federal court on October 23, 2015 (Notice of

---

[1] Page numbers referenced herein refer to those that the Court's electronic case filing system automatically assigns.

Removal, ECF No. 1)—seeks $40,000 in damages from the "Washington D.C. Eviction Marshals," which the Court will construe as the United States Marshals Service ("USMS" or "the Service").[2]

Before this Court at present is the USMS's motion to dismiss the complaint (*see* ECF No. 8.), in which it argues that this Court has no jurisdiction over Williams's action because Williams did not file a claim with the Service prior to bringing this lawsuit, and thus has failed to exhaust her administrative remedies pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2675, 2679-80.  In response, Williams asserts that she called USMS a number of times to lodge a complaint, but that her communications were "ignored or deleted."  (Opp. to Mot. to Dismiss ("Pl.'s Opp."), ECF No. 10, at 2–3.)

On September 30, 2016, this Court issued an order that **GRANTED** Defendants' motion to dismiss and **DISMISSED** this case without prejudice.  The instant Memorandum Opinion explains that the Court issued that order because there is no dispute that Williams has yet to present her claim in writing to the Service, and as a result, this Court lacks jurisdiction over Williams's claims.

I.   BACKGROUND

   A.   **Factual Background**

According to Williams's complaint, on the morning of June 19, 2015, Williams heard "a very loud banging on the front door" of her apartment located in the District of Columbia's southeast quadrant.  Williams asserts that she was inside the apartment

---

[2] Defendant removed this case to federal court pursuant to 28 U.S.C. § 1442.

2

along with her thirteen-year old daughter and a third person (James), and that all of them were confronted with "highly aggressive Marshals saying 'freeze'" and pointing guns at James. (Compl. at 1.) Williams further alleges that the deputy Marshals forced James out of the apartment without a shirt or shoes, and that the deputy Marshals then flashed a light in Williams's daughter's face and began questioning her and "aggressively yelling at her to get in the hallway." (*Id*. at 2.) While witnessing "the camotion [sic]" from her bedroom, Williams claims that she "was scared[]" and began looking for clothes to put on, but the deputy Marshals began yelling at her "to come out now." (*Id*.) Williams states that she was naked, and that two deputy Marshals entered her bedroom and forced her out "without nothing" on. (*Id*.) Williams alleges that she grabbed her daughter's pants and a top "and was shoved out into the hall w[h]ere 20+ men were standing and laughing." (*Id*.) She also asserts that her daughter "was crying" and "asking why are they doing this to us." (*Id*.) When Williams told the officers that "they [were] scaring [her] daughter," a deputy Marshal allegedly responded: "well I pay my bills you should to[o]." (*Id*.) And when Williams asked about "a writ," the deputy Marshal purportedly "said we have one see" and held up a piece of paper, but not in a position where Williams could read it. (*Id*.)

Williams claims that eventually the deputy Marshals allowed her daughter and James back into the apartment to dress, "but the leader would not let [Williams] get dressed." (*Id*.) Instead, she maintains that "[h]e brought out [her] purse," and left her "with cheap flip flops, no bra, no underwear and a hole the size of grapefruit in the front of [her] pants." (*Id*. at 3.) The deputy Marshals then "put [Williams's] belongings out [on the street] a 1/2 block long[.]" Williams asserts that sometime

3

after the eviction she noticed that certain items of her personal property were missing; namely, gold earrings, Bluetooth headphones, and a Windows tablet. (*Id.*)  In her complaint, Williams demands $40,000 in damages.  (*Id.* at 1.)

### B. Procedural Background

On July 28, 2015, Williams filed a hand-written complaint in the Superior Court of the District of Columbia, Civil Division, against the "Washington DC Evictions Marshals."[3]  The Service removed Williams's complaint to federal court on October 23, 2015, and on November 24, 2015, the Service filed a motion to dismiss the complaint, arguing that this Court lacks subject matter jurisdiction because Williams failed to exhaust the administrative remedies that the FTCA requires.  (*See* Def.'s Mem at 3–6.)  USMS attached to its motion a declaration from its General Counsel, who stated that he had reviewed the Service's files and had not located any written claim from Williams relating to the June 19th eviction.  Williams filed an opposition to the motion on December 31, 2015; in it, she recounted the circumstances surrounding the eviction and her efforts to call the Marshals office to file a complaint.  (Pl.'s Opp. at 3–9.)  Williams also attached to her opposition a letter that her daughter drafted regarding her

---

[3] The government's statements in this Court regarding the identity of the defendants—and, in particular, whether the government perceives Williams to be proceeding against the individual deputy Marshals who conducted the eviction, or USMS as an entity, or both—are muddled.  (*See, e.g.*, Notice of Removal ¶ 5 (characterizing Williams's claims as one "against Defendants the United States Marshals, who are officers of the United States and who are sued in their official capacity for acts under color of such office and on account of right, title, or authority claimed under an Act of Congress[,]" but not attaching any Westfall Certification that would allow the United States to be substituted as the named defendant); Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), ECF No. 8-1, at 3 (arguing that Williams has brought suit against the United States).)  Because Williams did not name any "Doe" defendants and completed only one summons, which was directed at the "D.C. Eviction Marshals," this Court will construe her complaint as being brought against the Service and not the individual officers.

4

recollection of the events of June 19th and the impact those events have had on her. (*Id.* at 10–13.)

## II. LEGAL STANDARD

### A. Motions To Dismiss For Lack Of Subject Matter Jurisdiction Under Rule 12(b)(1)

USMS contends that this Court has no subject matter jurisdiction to entertain Williams's claim against it, and thus that Williams's complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Def.'s Mem. at 3–6.)  When the court's jurisdiction is challenged, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002).  Moreover, and importantly, under Rule 12(b)(1), it is "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,' unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction[.]"  *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

"[T]he court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)."  *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).  Still, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008).  However, it need not "accept inferences unsupported by

the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). And if the court finds that it lacks subject matter jurisdiction, the matter ends there, because "the court [can] no more rule in favor of [a party] than against it." *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 2007).

### B. Standards For Pro Se Plaintiffs

In applying the legal standards addressed above, this Court is mindful of the fact that Williams is proceeding in this matter pro se. The pleadings of pro se parties are to be "liberally construed," and it is well established that a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993). That means that even a pro se plaintiff must plead facts that establish subject matter jurisdiction. *See, e.g.*, *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (dismissing complaint where pro se plaintiff failed to demonstrate subject matter jurisdiction).

## III. ANALYSIS

As a component of a federal agency—the United States Department of Justice—USMS enjoys sovereign immunity. *See Lyle Hughes*, 83 F. Supp. 3d 315, 321–22 (D.D.C. 2015) (dismissing tort claims against USMS on sovereign immunity grounds). "[S]overeign immunity shields the Federal Government and its agencies from suit[,]"

6

unless that immunity has been waived by statute.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (citations omitted)).  And the FTCA constitutes "a limited waiver of the Government's sovereign immunity," pursuant to which "plaintiffs may sue the United States in federal court for state-law torts committed by government employees within the scope of their employment."  *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (citing 28 U.S.C. §§ 1346(b), 2671-80)).

In essence, Williams's complaint claims abuse of process, infliction of emotional distress, and conversion, all of which are state-law torts that are generally cognizable under the FTCA.  However, before filing suit against the United States for a tort under the FTCA, a claimant must timely present a written claim to the relevant agency, and thereby exhaust her administrative remedies.  *See* 28 U.S.C. §2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."); *see also* 28 U.S.C. § 2675(a) (prohibiting the institution of a tort claim against the United States absent exhaustion of administrative remedies). "For purposes of the provisions of [the FTCA], a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain[.]" 28 C.F.R. § 14.2.[4]

---

[4] Standard Form 95 is available to the public on the Department of Justice's website.  *See* Standard Form 95, Claim for Damage, Injury, or Death (available at https://www.justice.gov/sites/default/files/civil/legacy/2011/11/01/SF-95.pdf).

Here, the record is clear that Williams has not submitted to the Service Standard Form 95 or any other written claim regarding the unfortunate events surrounding her eviction. A search of records in the Office of General Counsel for the U.S. Marshals Service did not "reveal any FTCA claim presented to the USMS by or on behalf of Donya Williams." (Decl. of Gerald M. Auerbach ¶ 5, ECF No. 8-2.) What is more, Williams herself admits in her opposition brief that she has not made any claim in writing to USMS, but instead attempted "to file a complaint with internal affairs," by making telephone calls to "the marshal's office." (Pl.'s Opp. at 2–3.) The law of this Circuit is clear that Williams's efforts on this front are insufficient because "the FTCA presentment requirement requires that the statement describing the injury be in writing." *Lacey v. United States*, 74 F. Supp.2d 13, 17 (D.D.C. 1999) (emphasis omitted) (citing *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987)); *see also GAF*, 818 F.2d at 919 (holding that, to exhaust administrative remedies, an FTCA claimant must "file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim[]"). And without having submitted such a writing to USMS, Williams cannot now proceeding federal court because a federal court can only assert subject-matter jurisdiction over an FTCA claim after the relevant federal agency has finally denied the written claim or has failed "to make final disposition of a claim within six months after it is filed." *See* 28 U.S.C. § 2675(a); *see also McNeil*, 508 U.S. at 113 (affirming dismissal of FTCA claim for lack of subject matter jurisdiction because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Smalls v. Emmanuel*, 840 F. Supp. 2d 23, 35 (D.D.C. 2012)

("Failure to comply with the administrative requirements of the FTCA deprives the Court of jurisdiction to hear the case.").

In short, because Williams has not filed a written claim with USMS, this Court cannot exercise jurisdiction over Williams's complaint.  *See Simpkins*, 108 F.3d at 371 (explaining that "the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action [i]s jurisdictional"); *Abdurrahman v. Engstrom*, 168 Fed. Appx. 445, 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction"); *James v. United States*, 48 F. Supp. 3d 58, 65 (D.D.C. 2014) (concluding that "[t]his Court can only assert jurisdiction over [FTCA] claim after the relevant federal agency has finally denied the claim") (citing cases)).

## IV.   CONCLUSION

For the reasons stated above, this Court presently has no jurisdiction over the tort claims that Williams presents in this action.  Accordingly, as stated in the Order dated September 30, 2016, USMS's motion to dismiss has been **GRANTED**, and William's complaint has been **DISMISSED** without prejudice to her right to file suit again, if and when she exhausts the required administrative process.


DATE:  October 17, 2016                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge